Filed 3/17/23  In re M.W. CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re M.W., A Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES BUREAU,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>S.F., et al.,<br><br>        Defendants and Appellants. | A165497<br><br><br>(Contra Costa County Super. Ct. No. J21-00349) |

        In this dependency action, S.F. (Mother) and J.W. (Father) (collectively, Parents) appeal the juvenile court's order terminating parental rights to their child M.W. (Minor), arguing failure to comply with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA).  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In July 2021, the Contra Costa County Children and Family Services Bureau (Bureau) filed a Welfare and Institutions Code section 300[2] petition alleging Minor was at risk of harm due to Mother's history of substance abuse and domestic violence, most recently involving her brother. The petition was sustained in August. The Bureau initially could not locate Father, but located him in late August.

Parents' parental rights to Minor's sibling (Sibling) had been terminated in 2017. The Bureau had provided notice of possible Indian ancestry to several tribes in connection with Sibling's proceeding but either received no response or were informed that Sibling was not an Indian child. Parents were initially unavailable to respond to ICWA inquiries in Minor's case but, because of Sibling's ICWA history, the Bureau stated there was reason to believe Minor is or may be an Indian child.

In a report filed in advance of the September 23, 2021 disposition hearing, the Bureau stated Father reported Cherokee ancestry, said he did not have contact information for registered family members, and informed the Bureau he was " 'working on getting registered.' " At the time of the report, Parents were not responding to calls or mail and neither appeared at the disposition hearing. Minor had been placed in the home of maternal relatives who had adopted Sibling. The juvenile court bypassed reunification services for both Parents and set a section 366.26 hearing for January 20, 2022.

---

[1] We omit facts not relevant to this appeal, including facts regarding Mother's possible Indian ancestry.

[2] All undesignated section references are to the Welfare and Institutions Code.

In an October 2021 ICWA report, the Bureau reported Father stated his sibling was a registered tribal member but declined to provide her name or contact information. Neither Mother nor Father had maintained contact with the Bureau or provided information about relatives with Indian ancestry. The Bureau had contacted tribes and agencies to provide the names and, if known, additional identifying information about paternal relatives gathered during Sibling's proceeding, including the Cherokee Nation enrollment number for a paternal great-grandfather. No tribe informed the Bureau that Minor was an Indian child.

On January 18, 2022, Mother filed a section 388 petition seeking reunification services. The juvenile court continued the section 366.26 hearing from January 20 to February 23, and set the hearing on Mother's section 388 petition for the same date. On February 1, the Bureau informed the court it had located Father.

In a report filed in advance of the February 2022 hearing, the Bureau reported Mother recently provided contact information for Father's twin sister and the Bureau had been trying to obtain information about possible Indian ancestry from the paternal aunt. At the beginning of the hearing, county counsel informed the court the Bureau had learned the day before the hearing that a paternal aunt was a registered Cherokee member. The juvenile court denied Mother's section 388 petition and continued the section 366.26 hearing to April 7, 2022 to allow further ICWA inquiry.

In a report filed in advance of the April 2022 hearing, the Bureau reported Father said he had submitted Cherokee registration documents in February with the help of his sister, but he had no copies of the documents. The juvenile court continued the hearing to May 4.

3

In a report filed in advance of the May 4, 2022 hearing, the Bureau reported providing tribes with all known relative information, including the names, dates of birth, and last known addresses of Father's twin sister, sister, cousin, and aunt; and, for the last three of those, the date they had been approved as Cherokee Nation members. Father's twin sister told the Bureau she had not helped Father prepare tribal registration documents.

At the May 4, 2022 hearing, Father testified he submitted an application for membership with a Cherokee tribe shortly after the April 7 hearing. Approximately one or two weeks before the current hearing, he received a letter from the tribe informing him he had provided the wrong social security number and requesting a picture of his state identification card. He sent the requested materials back four days before the hearing, except for his state identification card because he is still waiting for it to arrive by mail. His sister was supposed to have submitted his membership application for him, but since he did not know if she actually had done so, he proceeded to apply himself. Father did not have a copy of his application and did not bring to court the letter from the tribe. Following Father's testimony, the court continued the hearing to May 25.

In a report filed in advance of the May 25, 2022, hearing, the Bureau reported contacting relevant tribes on May 13 with updated information, including card and roll numbers for Father's great-grandfather and great-great-grandfather, and Cherokee registry numbers for Father's two sisters, cousin, and aunt. At the May 25 hearing, the Bureau submitted two exhibits into evidence: (1) a letter from the Bureau to the Cherokee Nation including a list of Cherokee relatives and copies of available relative membership cards, Father's twin sister's birth certificate, and Father's birth certificate; and (2) a

4

May 4 letter from the Cherokee Nation in response, stating Minor is not an Indian child.[3]

At the May 25, 2022 hearing, Father did not appear. When Father's counsel expressed concerns with proceeding in light of Father's pending tribal application, the juvenile court noted the application "is far from being imminently approved," and expressed "concerns about some of [Father's] testimony, his credibility, his inability to even submit an application, using the wrong Social Security number in this case, as he testified to, the inconsistent representations he made about whether his sister was the one that tendered the application or whether he did, the fact that this membership in the Cherokee tribe has been an issue ongoing since the sibling's case years ago, collectively raised concerns about whether [Father] is going to be able to get his application across the finish line in a timely fashion." The juvenile court reasoned the section 366.26 hearing was originally set for January, and "this exact issue was also raised in the sibling's case," such that Father "has had more than enough time to perfect and submit his application for membership in the Cherokee tribe." The court found no reason to believe ICWA applies or to delay proceedings pending Father's application process.

The court proceeded to the section 366.26 hearing and terminated Parents' parental rights to Minor.

DISCUSSION

Both Parents argue the juvenile court's finding that the Bureau's ICWA inquiry was adequate lacks substantial evidence because the Bureau failed to contact additional paternal relatives to inquire about Father's Indian

---

[3] The exhibits are not part of the record but their contents were described at the hearing.

ancestry. In the cases relied on by Parents, the social services agency had either not obtained any information or had only obtained scant information about the minor's possible Indian ancestry. (See *In re J.C.* (2022) 77 Cal.App.5th 70, 75–76 [parents denied Indian ancestry and agency failed to ask available extended family members about possible Indian ancestry]; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431 [same]; *In re H.V.* (2022) 75 Cal.App.5th 433, 436 [same]; *In re Y.W.* (2021) 70 Cal.App.5th 542, 553 [same]; *In re K.R.* (2018) 20 Cal.App.5th 701, 707 [agency notified tribes of possible Indian ancestry with name, birthdate, and birthplace of the father; name, birthdate, birthplace, and last known address of the paternal grandfather; and name of the paternal great-grandfather, but failed to interview extended family members to obtain additional information].) Here, in contrast, the Bureau obtained detailed information about Father's Indian ancestry, including tribal registration numbers for close relatives. Parents provide no authority requiring an agency that has already obtained substantial detailed information about Indian ancestry from some relatives to seek additional information from other relatives. We are unpersuaded by Parents' argument that these relatives could explain why Father is not a registered member when his siblings are, as it appears the reason is simply that Father has not yet completed the application process. Accordingly, we reject Parents' challenges to the juvenile court's finding that the Bureau's ICWA inquiry was adequate.[4]

---

[4] Because we do not rely on the ICWA noticing in Sibling's case to reach this conclusion, we need not address Father's argument that the prior ICWA noticing is not dispositive here. We reject Father's contention that the Bureau failed to inform Cherokee tribes that Father's two sisters were enrolled members, because the Bureau in fact provided this information to Cherokee tribes in mid-May.

Mother argues the Bureau was required to send formal ICWA notice to the relevant Indian tribes because Father had "so many relatives" enrolled.[5] Formal ICWA notice is required when there is "reason to know the child is an Indian child." (§ 224.2, subd. (c).) ICWA defines " 'Indian child' … as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' " (*In re Abbigail A.* (2016) 1 Cal.5th 83, 88 [quoting 25 U.S.C. § 1903(4)]; see also *id.* at p. 91 [California law provides that " 'Indian child' and ICWA's other critical terms 'shall be defined as provided in [ICWA]' " (quoting § 224.1, subd. (a))].) Reason to know a child is an Indian child exists under specific enumerated circumstances, none of which are addressed by Mother or present here.[6] Accordingly, Mother has failed to demonstrate that noticing was required.[7]

_____

[5] Both Parents join in each other's arguments.

[6] "There is reason to know a child involved in a proceeding is an Indian child under any of the following circumstances: [¶] (1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child. [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village. [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child. [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child. [¶] (5) The court is informed that the child is or has been a ward of a tribal court. [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d).)

[7] Mother cursorily contends formal notice was required because of her reported Pomo tribe ancestry. Mother informed the Bureau she had Pomo ancestry; however, the maternal relatives for whom Mother provided contact

Finally, Father argues the juvenile court erred in terminating parental rights while Father's tribal membership application was pending, relying on *In re Abbigail A., supra,* 1 Cal.5th 83.  In that case, a tribe stated the minors were eligible for enrollment but were not Indian children because neither of their biological parents was a member.  (*Id.* at p. 89.)  In light of this information, the minors' father told the court he intended to apply for membership.  (*Ibid.*)  Five months after the tribe reported the minors were eligible, the applications of the father and minors were still pending because the tribe required additional documents.  (*Ibid.*)  The juvenile court treated the case as if ICWA applied, pursuant to a then-existing rule of court requiring juvenile courts to proceed as if a child is an Indian child when the child is eligible for tribal membership but does not meet the definition of Indian child.  (*Id.* at pp. 88–90.)  The Supreme Court held the rule invalid. (*Id.* at p. 96.)

With respect to the issue of pending membership applications, the Supreme Court reasoned as follows: "The possibility that a child who is not an Indian child may become one while a custody proceeding is pending is something the juvenile court certainly should consider. ... [C]ustody decisions made in violation of ICWA may be set aside on petition by the Indian child's parent, Indian custodian or tribe (25 U.S.C. § 1914), thus requiring new jurisdictional and dispositional hearings.  Accordingly, to wait a few days or weeks while a parent or child pursues an application for tribal membership might in some cases save time in the long run.  'Although continuances are

---

information denied Indian ancestry.  The Bureau contacted multiple Pomo tribes with names and, when known, dates of birth of several maternal relatives; it either received no response or was informed Minor was not enrolled or eligible to be enrolled.  No formal notice was required.

discouraged in dependency cases' [citation], the juvenile court has authority to grant brief, necessary continuances that are not inconsistent with the child's best interests, while giving 'substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements.' ([] § 352, subd. (a); see [] §§ 352, subd. (b), 366.26, subd. (c)(3) [limits on continuances]; [Cal. Rules of Court,] rule 5.550(a) [continuances in dependency proceedings].)" (*In re Abbigail A., supra,* 1 Cal.5th at p. 95.)

The juvenile court did not err in declining to further continue the proceedings while Father's application was pending. The section 366.26 hearing had been continued over multiple months, the dependency proceeding had been pending for nearly a year, and Sibling's dependency proceeding had taken place years before, during which time Father knew of his Cherokee ancestry. We note that, should Minor become an Indian child while this proceeding is still pending, "[t]he tribe may intervene 'at any point in the proceeding.' ([25 U.S.C.] § 1911(c).)" (*In re Abbigail A., supra,* 1 Cal.5th at p. 91; see also *ibid.* ["ICWA authorizes collateral attacks: When a court removes an Indian child or terminates parental rights in violation of ICWA, 'any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action....' ([25 U.S.C.] § 1914.)"].)

## DISPOSITION

The juvenile court's order is affirmed.

_____

SIMONS, J.

We concur.

_____

JACKSON, P. J.

_____

BURNS, J.

(A165497)